**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Michael FUSSELMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 16, 2004.

Filed Dec. 14, 2004.

Reargument Denied Feb. 22, 2005.

Michael Fusselman, appellant, pro se.

Michael A. Sprow, Asst. Dist. Atty., Harrisburg, for the Com., appellee.

Before: KLEIN, PANELLA and JOHNSON, JJ.

KLEIN, J.:

¶ 1 Michael Fusselman appeals from the order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.

C.S. §§ 9541–9546, entered against him in the Court of Common Pleas of Dauphin County following a determination that he violated the terms of his probation regarding his seventh conviction for driving under the influence of alcohol (DUI). Fusselman had been placed on three years' intermediate punishment (IP) to run concurrently with a sentence he was serving in York County on unrelated charges.[1] After determining that Fusselman had violated the terms of his IP sentence, the trial court sentenced him to the statutory maximum of 2½ to 5 years' incarceration. Fusselman claims the sentence is improper as it exceeds the sentence originally imposed. After a careful review of the submissions of the parties, the official record and relevant law, we affirm.

¶ 2 Fusselman has a long history of motor vehicle violations, including seven convictions for DUI. There is indication in the record that Fusselman's driver's license has been suspended until the year 2030. In this instance, Fusselman rode a bicycle in front of a police car while intoxicated. Fusselman pled guilty to the DUI charge in exchange for a sentence of 3 years' IP, which basically took the form of restrictive probation. The trial court accepted the terms of the plea only because Fusselman was on a bicycle at the time of the offense and thereby mainly represented a danger to himself as opposed to others. The trial court informed Fusselman at sentencing that it would be inclined to sentence him to the statutory maximum if he violated his probation.

¶ 3 Two days after his release from the York County prison, Fusselman met up with a friend, went to a bar, got drunk, drove a car, fled the police, crashed the car into a parked vehicle, fled that scene, and finally abandoned the car and fled the police once more on foot. This factual scenario presents any number of violations of Fusselman's sentence and there is no dispute as to this fact.

¶ 4 True to its word, the trial court sentenced Fusselman to 2½ to 5 years' incarceration after determining he had violated his probation. The sentence was based upon Fusselman's long criminal history (not just his incredibly poor driving history) and the fact that Fusselman refused to learn from his mistakes, refused to take advantage of the opportunities to obtain help for his drinking problem, refused to acknowledge he had a drinking problem, and the clear danger Fusselman presented to the public at large should he be allowed to continue in his behavior. Basically, the trial court determined that enough was enough.

¶ 5 A brief jurisdictional review is necessary. Fusselman did not file a direct appeal. He did file a timely PCRA petition and counsel was duly appointed. PCRA counsel ultimately filed a *Turner/Finley* [2] no merit letter and petitioned to withdraw as counsel. The PCRA court, after proper Rule 907 notice, dismissed Fusselman's petition without a hearing and allowed counsel to withdraw. Fusselman then filed a timely appeal. Appellate counsel was appointed. Counsel then filed an *Anders* brief and motion to withdraw, apparently in the mistaken belief that an appeal from denial of a PCRA petition required that

---

1. For the purpose of this appeal, intermediate punishment is treated similarly to probation. See *Commonwealth v. Lehman*, 851 A.2d 941 (Pa.Super.2004); *Commonwealth v. Philipp*, 709 A.2d 920 (Pa.Super.1998); Pa.R.Crim.P 708 (formerly Rule 1409); 204 Pa.Code § 303.1.

2. *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988); *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988) (*en banc*).

filing.[3] Fusselman responded by filing a *pro se* brief claiming ineffective assistance of counsel throughout the process for failing to raise his sentencing issue. Specifically, Fusselman claims under *Commonwealth v. Anderson*, 434 Pa.Super. 309, 643 A.2d 109 (1994), the trial court cannot impose a sentence that exceeds the original sentence, three years in this case, because the original sentence was the result of a negotiated plea. Thus, the sentencing issue becomes cognizable under the PCRA because both ineffective assistance of counsel is asserted and the sentence is "illegal" under *Anderson*. Although we determine that Fusselman is not entitled to relief, we have jurisdiction to consider it and the merits of the argument will be addressed.

¶ 6 *Anderson* represents one of two divergent paths in the law that addresses the issue of what limits, if any, are placed upon a trial court when sentencing a defendant after probation violation. *Anderson* holds that where the original sentence was imposed as a result of a negotiated plea, the court may not exceed the terms of that plea when re-sentencing on a violation of probation. The other line of cases holds for the general proposition that under the express terms of relevant statute, the court is limited only to what the original punishment might have been, that is, the statutory maximum for the given crime.

¶ 7 To determine which line of cases is applicable we need to analyze the reasoning and history of *Anderson*.

¶ 8 Pamela Anderson pled guilty to burglary, theft and receiving stolen property. She received an 11½ to 23 month sentence to be followed two concurrent terms of 5 years probation for burglary and theft/

RSP. When Anderson violated the terms of her probation, the court sentenced her to two to five years' incarceration for the burglary charges and two to four years' incarceration on the theft/RSP to be served consecutively. Our court reversed the sentence based on two theories. First, a general proposition that the court is bound by the terms of a plea agreement; and second, any sentence imposed after probation revocation must not exceed the maximum sentence originally imposed.

¶ 9 We initially look at the second rationale. The notion that a sentence following probation revocation cannot exceed the original sentence is, in *Anderson*, derived from *Commonwealth v. Harrison*, 264 Pa.Super. 62, 398 A.2d 1057 (1979). However, this statement is merely found in a footnote and is not a part of the holding in the case. Also, *Harrison* deals with a situation where the trial court had originally issued a sentence to the defendant but then suspended that sentence pending successful completion of a probationary sentence. The *Harrison* footnote states:

It is well-settled that any sentence imposed as a result of this remand may not exceed the three year maximum imposed in the original sentence. *Commonwealth v. Tomlin*, 232 Pa.Super. 147, 336 A.2d 407 (1975); *Commonwealth v. Cole*, 222 Pa.Super. 229, 294 A.2d 824 (1972).

*Harrison*, 398 A.2d at 1059 n. 2.

¶ 10 *Tomlin* and *Cole* provide the next stop in our investigation. Both of these cases, like *Harrison*, involve a factual scenario where a sentence was suspended and probation imposed. This is important for two reasons. First, a suspended sen-

---

**3.** *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). A *Turner/Finley* no merit letter is the appropriate filing. However, because an *Anders* brief provides greater protection to the defendant, we may accept an *Anders* brief in lieu of a *Turner/Finley* letter.

tence represents a definite sentence. The defendant in that situation knows that a violation of probation will result in the imposition of the suspended aspect of the sentence. Thus, a defendant given a suspended sentence of one to five years' incarceration for aggravated robbery, as in *Tomlin,* and then violates his probation, is aware that he faces one to five years in prison. That one to five year sentence is a definitive part of the sentence as a whole. This aspect is not present when the sentence is simply one of probation. Second, the definitive aspect of a suspended sentence brings up questions of double jeopardy if a longer sentence is imposed upon violation of probation. This double jeopardy aspect is at the heart of both *Tomlin* and *Cole.* Double jeopardy, however, is not implicated in a situation where only probation has been imposed. *See Commonwealth v. Pierce,* 497 Pa. 437, 441 A.2d 1218 (1982); *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).[4]

¶ 11 If we trace the roots of the implication of double jeopardy back even further, we arrive at *Commonwealth v. Silverman,* 442 Pa. 211, 275 A.2d 308 (1971), as the genesis. However, *Commonwealth v. Postell,* 693 A.2d 612 (Pa.Super.1997), properly recognizes that *Silverman* was effectively overruled by the United States Supreme Court in *DiFrancesco, supra.*

¶ 12 Reviewing the above, it becomes clear that the statement in *Anderson* that "any sentence imposed after probation revocation must not exceed the maximum sentence originally imposed" is currently unsupportable, and was, in fact, unsupportable in 1994. Thus, this leg of support for the notion that the terms of a negotiat-

ed plea must be upheld even after revocation of probation no longer exists.

¶ 13 We turn our attention to the other leg on which *Anderson* rests. *Anderson* stated:

> By accepting the plea agreement, which included a negotiated sentence, the trial court, in effect, circumscribed its sentencing alternatives, the parameters of which were described in the plea agreement. We conclude that the trial court's initial sentencing options were thereby limited to the imposition of the negotiated sentence.

643 A.2d at 113.

¶ 14 Although *Anderson* does not directly address the point, this statement appears to be directed at 42 Pa.C.S. § 9771(b), which specifically states that on revocation of probation the "sentencing alternatives available to the court shall be the same as were available at the time of the initial sentencing." However, the logic of *Anderson* ignores two points. First, the trial court in accepting the plea has not circumscribed the sentencing options that were available to it. The court, when presented with a proposed negotiated plea has the option to accept or decline the proposed plea. That the court chooses to accept the terms of the proposed plea does not alter the fact that it had another sentencing option available to it.

¶ 15 *Anderson* also ignores the fact that by accepting a negotiated plea for concurrent sentences of probation, the court has accepted two limitations on sentencing, not just one. The court agrees to sentence concurrently and has also agreed to sentence the defendant to probation. Thus, accepting *Anderson's* logic, the court has circumscribed its sentencing alternatives,

---

4. The double jeopardy clause set forth in the Pennsylvania Constitution is coextensive with the federal constitutional standards. *Commonwealth v. Kunish,* 529 Pa. 206, 602 A.2d 849 (1992).

the parameters of which were described in the plea agreement, not only to concurrent sentences but to probation as well. If the court has limited itself in one term, then logically it must limit itself in the other. Yet no one can seriously argue that the court is not allowed to revoke probation and resentence the violator to a term of incarceration.

¶ 16 We would never consider limiting the court's right to impose incarceration after the violation of a negotiated plea for probation (concurrent sentences or not) because the legislature has specifically stated that a court may do so. *See* 42 Pa.C.S. § 9771(b). It is that same statute that allows the court to sentence to any alternative available to it at the time of original sentencing. The same right to revoke probation and sentence a defendant to incarceration is the same right to sentence up to the statutory maximum. Section 9771 does not discriminate between the negotiated plea and the open plea. The same alternatives for one exist for the other.

¶ 17 This view is supported by decisions subsequent to *Anderson* that have limited the application of the *Anderson* rule to concurrent sentencing. *See, e.g., Commonwealth v. Williams*, 801 A.2d 584 (Pa.Super.2002); *Commonwealth v. Ware*, 737 A.2d 251 (Pa.Super.1999). In both cases the defendant entered into a negotiated plea that limited the sentencing options of the trial court, specifically, the exact amount of time served. This limitation fits the *Anderson* notion of circumscribing the sentencing option of the trial court at the time of sentencing. As in an agreement for concurrent sentences as opposed to consecutive, an agreement to an exact length of sentence represents a choice for the trial court—to accept the terms of the plea or reject them. Both situations also represent limitations on the

length of a sentence. Once the court accepts a specific sentence of duration it has circumscribed its sentencing options. Yet both *Williams* and *Ware* recognize that section 9771 specifically allows the court to extend the duration of punishment after the defendant violated the terms of the original sentence. But there is no logical reason for treating a negotiated plea for a specific length of sentence any differently from a negotiated plea for concurrent as opposed to consecutive sentences.

¶ 18 The logic of *Anderson* further ignores the nature of a negotiated plea. It is a bargain, a contract between the Commonwealth and a defendant upheld by the courts, just as any other bargain may be upheld. In a negotiated plea, the defendant agrees to forego certain behavior. In return, the Commonwealth agrees—in the situation presented before us—to not seek the incarceration of the person. The court upholds that agreement. However, when the defendant violates the terms of the agreement, like any other bargain, the contract is broken. The Commonwealth may then seek to incarcerate the defendant. *Anderson*, however, gives the defendant the benefit of the bargain in spite of the fact that it was the defendant who breached the contract. This represents a rather odd interpretation of contract law. Certainly if a person agrees to buy a home for $200,000 and delivers only $100,000, the court is not expected to require the seller to turn over the keys to the house, not even for half the time. Given the plain language of section 9771(b) that gives the court the right to sentence up to the statutory maximum when the defendant has violated the terms of probation, there is simply no reason to give a *violator* the continuing benefit of a negotiated plea for probation.

¶ 19 The other line of cases presents no limitations to the trial court in sentencing

post-revocation.[5] These cases read the statutory language as written and allow the sentencing court to act in a case by case basis. This line of cases is embodied, in chronological order, by: *Commonwealth v. Colding,* 237 Pa.Super. 612, 352 A.2d 554 (1976) (increase in minimum sentence following violation not prohibited by double jeopardy considerations); *Commonwealth v. Nance,* 290 Pa.Super. 312, 434 A.2d 769 (1981) (no double jeopardy for increased sentence following violation, Pennsylvania law specifically allows for possibility of increase); *Commonwealth v. Ware,* 737 A.2d 251 (Pa.Super.1999) (increase in sentence following violation allowed by statute and does not violate negotiated plea agreement); and *Commonwealth v. Williams,* 801 A.2d 584 (Pa.Super.2002) (increased sentence following violation does not violate prior negotiated plea agreement).

¶ 20 It becomes apparent by reading the progression of these cases that once the prohibition against extending sentences due to double jeopardy considerations was removed, the statutory language of 42 Pa. C.S. § 9771[6] became paramount. As noted earlier, the language of section 9771 does not discriminate between the negotiated plea, the open plea or a finding of guilt. The statute simply allows the court to sentence in accordance with any option available at the time of initial sentencing.

¶ 21 What we are left with in comparing the two lines of cases is a situation where, upon revocation of probation, the court is allowed to consider any option it has at the initial sentencing except when the trial court initially imposed concurrent sentences. In spite of our analysis demonstrating the current lack of foundation for *Anderson,* it has never been specifically overruled.[7] *See Commonwealth v. Adebaike,* 846 A.2d 759 (Pa.Super.2004).[8] In the current situation, Fusselman was sentenced to IP concurrent to an unrelated sentence in York County. In this regard, it might appear that we are bound by *Anderson.* However, the subsequent limitations placed on *Anderson* by *Williams* and *Ware,* no matter how illogical they might seem, nonetheless appear to limit *Anderson* to a situation where the revocation sentence transforms the previously concurrent sentences into consecutive sentences. There is no indication that Fusselman was on either probation or parole for

---

5. A sentencing court is always limited by abuse of discretion or manifest injustice.

6. In the earlier cases, the relevant statute was 18 Pa.C.S. § 1371. This statute was transferred to the current statute in 1980. Both statutes allow the court, on revocation of probation, to use the same sentencing alternatives available at the time of initial sentencing.

7. While we would welcome it if *Anderson* were overruled, we may still distinguish *Anderson* because it has been limited to concurrent sentences.

8. *Adebaike* adds an additional rationale in limiting sentences upon revocation of probation. *Adebaike* recognizes that one of the reasons to impose total confinement after probation has been revoked is to vindicate the authority of the court. *See* 42 Pa.C.S. § 9771. *Adebaike* states: "In essence, the court vindicates its authority by revoking probation, which is essentially a somewhat conditional, yet not usually onerous, freedom, and imposing confinement. It is not necessary in order to vindicate the court's authority to impose a relatively harsh sentence." 846 A.2d at 764. We cannot read this to indicate a *per se* rule against imposing ·the statutory maximum when probation has been violated. The legislature has allowed the court the freedom to consider any option it had at the time of initial sentencing and so we cannot read "vindication of the court's authority" language as an outright limit on resentencing. The determination of whether a sentence imposed following revocation of probation is relatively harsh, excessively harsh or an abuse of discretion is a separate inquiry from what the court may consider at resentencing.

# 1115

the unrelated York County sentence at the time he violated his IP.

¶ 22 Given that the current factual scenario does not exactly fit the *Anderson* model, we believe the logical underpinnings of *Anderson* have failed, and logical reasoning and statutory language analyses of the *Colding, et al.* cases are consistent and persuasive, we believe the proper course here is to follow the statutory language. Therefore, we find no error in the sentence imposed.

¶ 23 Order affirmed. Motion to withdraw granted.

¶ 24 PANELLA, J., concurs in the result.